Good morning, Your Honors. Tony Gallagher, Federal Defender for the District of Montana for Defendant Appellant, Rene Del Toro Gudino. The right of the people to be secure in their persons and effects against unreasonable searches and seizures shall not be violated. And it was in Rene Del Toro Gudino's case because he was detained, arrested, by a Hill County Deputy Sheriff because he was one of two Hispanic-looking transient males. Let me ask you a couple questions. Yes, sir. The Supreme Court took cert in a case called HIBEL, H-I-I-B-E-L, this year. Yes. And it looks as though they may talk about whether stops such as this are okay or whether identity can be suppressed in a case like this, at least tangentially, even though the cert grant doesn't speak to it directly. Should we defer submission until that case comes down? No, Your Honor. I would ask this Court not to because HIBEL doesn't clearly address the issue that we have here. No, it doesn't. But I don't know what they're going to say in their opinion. And it looks as though it's close enough so they may speak to it. They may speak to it. And I think that they spoke to it in Lopez-Mendoza, too. And it's just not clear. And I think that we need some clarity in this area. One of the things that I did below The Ninth Circuit is a better source of that than the Supreme Court. I do. You can say that. I do. I absolutely do. Let me ask you about something else. Even if the stop was what the cases would call egregious, assuming without deciding that, just for purposes of discussion, why doesn't the principle that identity cannot be suppressed control this case? I don't think that that is the principle, first of all. Identity can be and should be suppressed if there's an egregious violation of the Constitution. Because I know there's a Supreme Court case cited that seems to go the other way. It does seem to go the other way. You have a case that says, that supports what you just said. I have a number of cases that support what I just said. I have no case that says exactly what I just said. Is there a case where identity was suppressed as a result of an egregious violation of the Fourth Amendment? That would have been Gonzalez-Rivera v. INS, which was a civil INS case where the bad faith egregious violation caused for application of the exclusionary rule in Mr. Gonzalez's case. And that's cited in my brief and discussed in both my brief and the government's  But it's a civil case, not criminal. It is indeed an INS case. And it's not a criminal case. But my argument is that it's even more important that it be applied to a criminal case because of the constitutional issues that are involved. And when we're talking about the fact that this is a continuing crime, well, it is indeed a continuing crime. And the fact that he is here, his presence, makes that a criminal event. Right. But his – the discovery of his identity should be suppressed. That doesn't mean he can't be deported. He just can't be – But why can't he be – why can't he be prosecuted five minutes later because of the fact that it is a continuing event? Because they came upon him by an egregious violation of the United States Constitution. He does not get to stay here, Your Honor. Is it never a crime, then? It is not a crime. But you're saying he could be deported. He certainly can be deported. Why would his identity be suppressed in the deportation context? Because that's where Lopez-Mendoza, I believe, controls. And in this context, with René del Toro Godino, they arrested him. And they arrested him illegally. I'm saying that they should not be able to prosecute him. They can deport him. Why wouldn't González-Rivera protect him from the deportation? Because, as Judge Solomon pointed out, in the deportation proceeding that we're talking about that may come five minutes after René del Toro Godino is arrested on a criminal offense, his continuing presence in the United States is against our law. He cannot stay here. And even though he was arrested illegally, that, under Lopez-Mendoza, is not sufficient to let him stay. He has to be deported. But he can't be prosecuted. You say he's arrested illegally. Yes, sir. I know we've assumed that. Judge Kleinfeld asked you to assume that without deciding it. But is that whole premise here based on the fact that the police report says they're Hispanic, transient, open persons? That is indeed the premise. And if the Court recalls— That's all there is? So are you saying that police are not—they're not even allowed to mention the race of somebody? I'm not— What if they said they're Chinese, transient, open people? I'm not saying that at all, Your Honor. But I have included with the excerpts of record the police report that was submitted by Deputy Sheriff Osberg. And that is a one-paragraph description of the reason for his arrest of Rene Del Toro Godino. And that is at page 12 of the excerpts of record. While on patrol, I drove behind a town pump convenience store on First Street. I noticed two Hispanic, transient-looking males sitting on the sidewalk. I got out of my patrol vehicle and tried to identify the males. Their English was broken. And I believe that they were being evasive, so I called dispatch to notify the Hollywood Patrol. Your Honor, the fact that they're Hispanic to say— But the reason that he went to— They had broken English and that they're evasive. But you're saying they can't even stop in question. If he says they're Hispanic, he can't even stop in question. If that's the only reason— I didn't think it was the only reason. It looked to me like he had three things that were reasons for questioning him, for getting out of his car and talking to him. One is Hispanic, which in this circuit won't carry the day. But it doesn't poison it either. It just won't carry it. Number two, they look transient. And number three, they're loitering. I mean, ordinarily, a sidewalk is for walking. This guy's using it for sitting. At 2 o'clock in the morning. It is, indeed, 2 o'clock in the morning. Actually, it's almost 3. Almost 3. Yes, sir. Hanging around commercial business. Yes, sir. So what prevents a deputy from getting out of his car to say, who are you guys and what are you doing here? I mean, that's not a seizure under the Fourth Amendment. It is. We have as a Terry stop at that. What it is, but then under Terry, we do not have the articulable circumstances that would allow him to do this. We don't even have a description that this is a business. We don't have a description that they're going to count. Well, O&M Pump is presumably a gas station. It is, indeed, a gas station. But we need those articulable circumstances to say that it's late at night, that this is a high-crime area. Right. We need those articulable circumstances. At this point, all he's done is to say, who are you and what are you doing here? And the answer is, I don't have any identification. They start responding in broken English. At that point, we don't even know if they're able to communicate with him. But at some point, he runs a record check and finds out that the other man is wanted out of Oregon. All after the arrest. Your own case has to be premised on the theory, apart from the Supreme Court, the issue of suppression of identity, that it's illegal under the Fourth Amendment to ask someone who they are if you notice they're Hispanic and they're transient and they're loitering. What I realize… You can't, in those circumstances, even say, tell me who you are or what are you doing here. Isn't that your case? No, that's not my case. My case is that this was, this stop was based solely upon the way they looked and they looked Hispanic and transient. But you also said transient. Yes. So it's not based solely on Hispanic, saying Hispanic and transient. And sitting. Pardon me, Your Honor? Sitting. Sitting. Instead of walking. Sitting on the sidewalk. At 3 o'clock in the morning. At 3 o'clock in the morning. In a business area. But those are not articulable circumstances. Those are not articulated circumstances. Ask people, what are you doing at this hour of the night and who are you? Your Honor, what we're all talking about here are things that perhaps Judge Haddon should have asked us to… You know, if I was sitting on the sidewalk in a business area of Fairbanks at 3 in the morning, even though I don't suppose I look transient, I would expect a cop to ask me, you okay? Get out of his car. Something wrong? Because I don't look right. It's odd to be sitting there. That's not what Deputy Osberg did. And that's probably a reasonable thing to do. I mean, it's just a policeman responding to something that doesn't look right. He was responding to something that didn't look right from his own words because they were Hispanic-looking males who were transient. And yes, they were sitting on the sidewalk. What I ask the court to consider here is, even if you're not going to find that this was an egregious violation based on this record, what I ask you to find is that if there was an egregious violation of the United States Constitution, that his identity is suppressible. And if we can't determine whether this is egregious from this record, it should go back down below for Judge Haddon to make that determination. I mean, it almost — it sounds like you're asking us for an advisory opinion. If we don't find that it's egregious, we nonetheless should declare that if it is egregious, then you may suppress the identity. What I'm saying is — But the Supreme Court's already said that. What they didn't tell us is what constitutes an egregious — An egregious violation of the United States Constitution. So isn't that the beginning and the end of it? If we can't determine from this record that the stop was egregious, then that's as far as we go. I don't think that that's true because I wasn't allowed to develop the record. So we should remand it and ask the Court to hold a hearing. Absolutely. But the Court did not hold a hearing, not because he didn't feel that there was a prima facie showing of illegality, but because evidence of identity can never be suppressible. That's what needs to be reversed. That's what gets back to the first question I asked you, which is it is now December 2nd, 2003. And if he's still here, I don't know if he is or not, he is still in violation of the law. It is a continuing offense. The law says you cannot remain in the United States without permission of the Attorney General if you have previously been deported. Your Honor, I don't mean to be glib, but he's here now because he's serving 30 months on a criminal violation. And I believe that that's a violation of his constitutional rights. He is a person. Okay, but what's bothering me about this crime is on the day that we release him from the Bureau of Prisons — He'll be deported. He could be arrested again. But he'll be deported. But he's still in violation of the law. But what I'm saying is that on this particular event, he can't be arrested again, but he can be deported. And that's fine. If he's deported, he's no longer in the United States in violation of the criminal law. Why couldn't he be arrested again, you're saying? Because that would be — Well, right now he's in custody. That would be a fruit of the initial stop. Absolutely. Didn't the Supreme Court say in the Alvarez-Machin case involving the Mexican doctor who tortured Enrico Camarena, the DEA agent, that when he was kidnapped from Mexico, that he could be forced to stand trial in the Central District of California on the indictment for the conspiracy to murder the DEA agent because the district I did not read that case, but I believe that that is an accurate description of what happened there. And they've always said that if there's a violation outside the United States, that brings him into the United States. I mean, I tried cases in Maryland where they kidnapped my clients from their — D.C. or whatever. Well, contrary to popular belief, it is part of the United States. Although it's a territory — I meant no disrespect. But I see that my time is up, and I — Well, I guess the question I had for you, though, was if that wasn't an egregious enough case for the Supreme Court of the United States to order the doctor returned to Mexico instead of being forced to stand trial, then how could we possibly declare — because there's a set of facts to be egregious. Well, as I understand — and once again, I was not — this particular issue did not come up during the briefing process. But as I understand it, when you commit a violation outside the United States, once they're in the United States legally for the purpose of prosecution, then they're in the United States for the purposes of prosecution. I mean, much the same happened to — Although his claims were that he was kidnapped and falsely imprisoned in the United States. Much the same happened to the dictator from Central America who we had a war to go get. Right. And we prosecuted him, and he — Prosecuted him. So I think that the difference is that that happens outside the territory of the United States. This, obviously, although some people may disagree that Hyper-Martana is within the territorial district of the United States, it is indeed — We recognize it as part of the United States.  Thank you. Thank you very much. Thank you, Your Honor. Good morning again, Your Honors. The way this case comes to the Court is on the legal issue. And that's why the facts, as Mr. Gallagher said, were not developed below, because Judge Haddon ruled as a matter of law following Lopez-Mendoza and the Guzman-Bruno case, that as a matter of law, the U.S. Supreme Court has said that this identity can never, in a civil or criminal case, be suppressed. Unless it's an egregious violation. Well, they didn't — again, Your Honor, I — Well, that's in dictum somewhere, you know, that wasn't critical to the disposition of the case. Their rationale kind of leaves that open. It does, Your Honor. But now it's up to the Court to try to figure out how we're going to craft that, because it seems to me sort of inconsistent. How can it never be, and yet there be an opening somewhere there? And I think courts have kind of struggled with that. The Eighth Circuit, in its jurisdictional cases, and this circuit in an unpublished decision, has struggled with a way to make — make the violation of someone's rights go around Lopez-Mendoza. So I think that's what Mr. Gallagher is saying when he says the answer here is not just to remand to develop the record, whether it's egregious, because you have to first get to the issue of whether it is as a matter of law can never be suppressed. And what was the government's position with regard to the propriety of the initial stop? We took the position, Your Honor, that the identity can never be suppressed. We didn't address the — whether or not the stop was right, wrong, or indifferent. So what's your position now? I don't think it was that unreasonable of a stop. As the Court has developed in its questioning of Mr. Gallagher, it was 3 o'clock in the morning. We've got two males who are transient. They are described as Hispanic, but how else are you going to describe them? I think if the testimony is developed, I think police officers, patrol officers all over the country would say that if they find people sitting around, especially in Haver, Montana, where there's not that many people, sitting around on the curb outside a convenience store at 3 o'clock in the morning, they're going to stop and inquire as part of the serve and protect mission of the police force. They're not always out looking for criminals. Sometimes they're actually stopping just to see if something's going on that they should know about. So I don't think, Your Honor, that if this case is remanded for hearing, that it will be found to be egregious, but that will be Mr. Gallagher can develop that below. We still don't get to the issue, though, around this. Judges like Judge Haddon, I think, will rule as a matter of law following the Supreme Court's opinion and the Guzman-Bruno decision and various other decisions that seem to reaffirm that Supreme Court maxim that it can never be suppressed until this Court has ruled to the contrary or saying what the exception is that they need to apply. That is why I believe Judge Haddon was not responsive to having the unpublished decision when it was placed in front of him responding to it, because for, as this Court knows, for all intents and purposes, an unpublished decision doesn't serve as a rule of law. So I agree with Mr. Gallagher that that is the issue. The seminal issue has to be the legal issue dealing with whether the identity and body of a person can ever be suppressed under any circumstances. And what should we do? Should we defer submission until Hibble comes down? I would say no, Your Honor, because I agree with Mr. Gallagher that I'm not certain that this issue will be readdressed by Hibble. I'm not either. I mean, my feeling is the odds are it won't be, but it could be. And it could be, but the problem is, is you've got a fellow spending, as Mr. Gallagher will quickly remind us, 30 months in prison. And if we wait for the Supreme Court to rule on an issue that it's not directly in front of them, I think that would possibly do a disservice to Hibble. Kennedy, is the Nevada case where the deputy asked the guy for identification and the guy basically told him, I don't have to tell you who I am, and so he arrested him for obstructing or whatever the Nevada statute is? I think so. Okay. Thank you, Judge. Your Honors. And I appreciate the Court rearranging its schedule for me this morning. Thank you. Thank you, Counsel. United States v. Godino is submitted. Next is United States v. Hernandez-Hernandez. May it please the Court, my name is Rebecca Pennell. On behalf of Ms. Sayo Hernandez-Hernandez, I wanted to go to the second issue in the briefing first, the issue of the prior conviction out of the municipal court for threats to do harm. The government has two arguments for why that conviction should be included in the criminal history score. And the first issue they raised was to make it clear,
judges: Kleinfeld, Gould, Tallman